# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

| | |
|---|---|
| **WAL-MART STORES, INC.** | **PLAINTIFF** |
| **V.** | **CAUSE NO. 1:06CV326** |
| **QORE, INC.; SAIN ASSOCIATES, INC. AND SHANNON, STROBEL & WEAVER CONSTRUCTION & ENGINEERS, INC.** | **DEFENDANTS** |
| **SHANNON, STROBEL & WEAVER CONSTRUCTION & ENGINEERS, INC.** | **THIRD PARTY PLAINTIFF** |
| **V.** | |
| **CAMCO CONSTRUCTION COMPANY, INC.** | **THIRD PARTY DEFENDANT** |

## MEMORANDUM OPINION

This cause comes before the court on the motion [244] of the defendant, Shannon, Strobel & Weaver Construction & Engineers, Inc. ("SSW"), for a judgment as a matter of law or alternatively for a new trial.

Plaintiff, Wal-Mart Stores, Inc. ("Wal-Mart") alleged defendants, Qore, Inc. ("Qore"), Sain Associates, Inc. ("Sain"), and SSW were negligent in the construction of the Starkville Wal-Mart site.[1] Specifically, Wal-Mart claimed Qore and Sain were responsible for problems with the design of the building and parking lot. Wal-Mart alleged SSW through its subcontractors[2]

---

[1] Wal-Mart also brought breach of contract claims against each of the defendants. The alleged breach was the negligence of each defendant. For the sake of efficiency the court will treat all claims as negligence claims.

[2] The jury found that Camco Construction Company ("Camco") and/or its subcontractors were liable for all construction defects on the instant project. All parties agree SSW is liable for any fault found with Camco. For the sake of clarity this opinion refers to SSW when discussing any fault allocated to SSW, Camco, or Camco's subcontractors.

was responsible for construction defects in the building and parking lot. Wal-Mart also claimed Qore was negligent under a separate testing and inspection contract.

This court conducted a twelve day trial of the instant matter in February 2009. At the close of evidence the court submitted to the jury a verdict form containing eighteen questions. Those eighteen questions broke Wal-Marts claims into three separate categories: (1) repair or replacement costs to the parking lot; (2) repair or replacement costs to the building; and (3) diminution in value of the building. The jury found Qore and Sain not liable for the design of the parking lot or the building. They found SSW liable for construction defects to both the building and parking lot. The jury also found Qore liable for damages to the building based on its failure to detect the construction defects. The jury found no liability as to the diminution in value claim. The verdict shows the jury believed the totality of the damages to Wal-Mart were due to construction defects.

SSW makes a number of arguments challenging the verdict. Those arguments can be broken down into three contentions: (1) Wal-Mart abandoned its claims against SSW; (2) there is not sufficient proof of causation as to the parking lot claims; and, (3) there is not sufficient proof of causation as to the building claims.[3] Each of these three arguments have been created by the sometimes contradictory theories of liability presented by Wal-Mart at trial. Wal-Mart generally argued the pavements and building failed because of negligent engineering. Alternatively, Wal-Mart alleged that SSW's construction defects caused damage to the property. The jury rejected the primary theory advanced by Wal-Mart, but did, however, award damages based on the supplemental theory presented. The scattered theories advanced by Wal-Mart were supported by

---

[3] SSW also raised a contractual defense in it original motion. It concedes that defense was waived prior to trial.

conflicting evidence which the court must now parse.

A motion for judgment as a matter of law in an action tried by a jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict. *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995). A jury verdict must be upheld unless there is no legally sufficient evidentiary basis for a reasonable jury to find as it did. *Hiltgen*, 47 F.3d at 700. (quoting Fed. R. Civ. P. 50(a)(1)). A jury may draw reasonable inferences from the evidence, and those inferences may constitute sufficient proof to support a verdict. *Id*. On appeal an appellate court is bound to view the evidence and all reasonable inferences in the light most favorable to the jury's determination. *Id*. Even though the court might have reached a different conclusion if it had been the trier of fact, it is not free to reweigh the evidence or to re-evaluate credibility of witnesses. *Id*. The court must not substitute for the jury's reasonable factual inferences other inferences that it may regard as more reasonable. *Id*.

The decision to grant or deny a motion for a new trial is generally within the sound discretion of the trial court, and is reversible only for an abuse of discretion. *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982). A trial court should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence. *Whitehead v. Food Max of Mississippi, Inc.*, 163 F.3d 265, 269 (5th Cir. 1998) (quoting *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998)). In passing on a motion for a new trial, a trial court does not need to take the view of the evidence most favorable to the verdict winner, but may weigh the evidence. *Shows*, 671 F.3d at 269 (quoting *Bazile v. Bizzo Marine Co., Inc.*, 600 F. 2d 101, 105 (5th Cir. 1979)). This does not mean that a judge may order a new trial simply because he or she disagrees with the jury verdict. *Id*. The judge must be convinced that the verdict is against the great weight of the evidence. *Id*.

SSW's requests for a judgment as a matter of law or alternatively for a new trial are so interwoven the court will address them together.

The first issue is whether Wal-Mart abandoned its claims against SSW. This issue stems from arguments related to Wal-Mart's opposition to SSW's motion for a judgment as a matter of law. During that argument Wal-Mart's attorney stated it was not seeking damages to the building from SSW. Wal-Mart argues it was simply abandoning the diminution in value claim and not the repair or replacement costs claims. In support of this Wal-Mart argues the statement in question was taken out of context and that even if the oral statement supported such a finding, its written brief clearly sought to hold SSW liable for repair and/or replacement costs associated with the building's construction. Wal-Mart also argues the pre-trial order sought damages from SSW on these claims.[4]

The court thoroughly questioned Wal-Mart in regard to the claims it was bringing. Following a long statement about the damages to the parking lot, the court asked if Wal-Mart was bringing claims against SSW for damages to the building. Wal-Mart stated it was not seeking compensation for damages to the building. There were no caveats to this relinquishment.

However, the oral argument was only a portion of the discussion related to the motion for a judgment as a matter of law. Following the oral argument Wal-Mart submitted a brief stating that it was not making claims for diminution in value of the building,[5] but was seeking to hold SSW responsible for repair costs associated with fixing the building.

Having reviewed the transcript and brief it is apparent that Wal-Mart considered all

---

[4] The court does not believe a claim can be preserved simply by including it in the pre-trial order. However, the court decides this issue without reaching that question.

[5] Wal-Mart did attempt to reserve its right to collect any damages for diminution the jury awarded.

repairs, whether associated with the parking lot or the building, to be one claim. At the time of SSW's motion the court had not ruled on how the claims would be submitted to the jury. Thus the final instructions were not representative of Wal-Mart's arguments. Wal-Mart intended to hold SSW liable for the repair costs associated with fixing the building. As such the court finds Wal-Mart did not abandon its claim against SSW for repair damages associated with the building.

SSW next argues there was no proof construction defects caused specific damages to the parking lot.

"[D]amages which are uncertain, contingent or speculative are not recoverable. *Hudson v. Farrish Gravel Co.*, 279 So. 2d 630, 635 (Miss. 1973) (citing 15 AM JUR. *Damages* § 20, at 410 (1938)). Recovery is prohibited "where it is impossible to say what of any portion of the damages resulted from the fault of the defendant." *Id*. at 636 (citing *Chevron Oil Co. v. Snellgrove*, 175 So. 2d 471 (Miss. 1965); 15 AM. JUR. *Damages* § 22, at 413 (1938).

SSW argues that Wal-Mart proved construction defects and damages, but did not prove what damages were caused by the construction defects. It is undisputed that the remediation work put the parking lot in a better position than it was originally contracted to be built. Further all the parties agree Wal-Mart can only recover for the costs of putting the parking lot in the position it originally requested. *See, e.g.*, *Gerodetti v. Broadacres, Inc.*, 363 So. 2d 265, 268 (Miss. 1978). SSW claims this leaves three unanswered questions: (1) what is the difference between the costs to repair the property to the state originally contracted for as opposed to the improved condition created by the remediation contract; (2) what portion of the damage was caused by construction defects as opposed to factors outside SSW's control; and, (3) what portion of the damage resulted from construction deficiencies.

First it must be determined if Wal-Mart put on proof sufficient to show the costs of repairing the parking lot to the condition as originally contracted. Exhibit WM-375 shows that Wal-Mart paid $5,749,417 under the remediation contract. That exhibit also shows the construction costs of the betterments Wal-Mart added to the original plans. By subtracting the betterments from the original plans the jury could have determined the cost of building the parking lot in accordance with the original design.

There is no dispute that there were at least some construction defects in building the parking lot. The question is whether there was proof those defects caused the damage for which Wal-Mart sought redress. Wal-Mart points to the testimony of Charles Furlow for the proposition that the pavement was of an uneven thickness. Furlow stated that in some areas the pavement was only a third of the thickness called for by the plans. He further testified that the lime treatment under the pavement was uneven and was generally less than ordered. Furlow also stated there were areas of compaction around utility lines. Finally he testified that the grade of the pavement was incorrect. Each of these problems is a construction defect. Furlow testified that this created a pavement that was weaker than that called for by the plans.

SSW argues this is not enough to sustain the verdict because there was no evidence the entire parking lot had to be replaced instead of just repaired.

SSW argues Wal-Mart is only entitled to repair costs that would have put the parking lot in the same condition as originally contracted. Wal-Mart argues that there is no distinction between repair and replacement costs while admitting it is only entitled to recover damages required to put the parking lot into the state originally contracted. This disagreement can be broken down into two distinct claims. First, SSW argues Wal-Mart did not put on proof showing that the parking lot had to be replaced instead of being repaired. SSW argues the replacement

instruction was valid only to the extent the jury found the original design caused the failure of the parking lot. Under this theory the design of the parking lot was such that properly lime treating the soil and evenly laying the asphalt would have still lead to a failure and thus a new parking lot with a new design was required. Wal-Mart believed at least some of the damages were caused by the design of the parking lot. However, in deciding whether to grant a judgment as a matter of law the court does not consider the theories presented by either party. Instead the court must construe all evidence in favor of the verdict. In applying this standard the court must conclude all the damage was caused by the negligence of Wal-Mart or SSW. Thus Wal-Mart does not have to distinguish between damage caused by SSW and damage caused by third parties in order to prevail. Wal-Mart simply has to offer proof that SSW caused the damages to the parking lot.

The jury saw proof of a parking lot where the pavement had failed to withstand use. There were major cracks and in some areas complete collapse. From this set of facts the jury could have inferred that the pavement was too weak because it was not constructed to the specifications ordered by Wal-Mart. They could have further found that the weakness of the pavement was responsible for all the damage. Furlow's testimony is consistent with such a finding. A major portion of that testimony related to the variances in construction quality. Variances in quality explain the differing problems with the parking and why some failures were significantly greater than others. This is enough evidence for the jury to determine that SSW was liable for repairing or replacing all the pavement and at least a portion of the lime treatment.

Wal-Mart put on proof to show the cost of constructing the parking lot to its original design. The court is now faced with the question of whether Wal-Mart showed enough specificity in its proof to sustain the jury's verdict. Wal-Mart points to the remediation contract and costs of betterment evidence discussed above. Wal-Mart also relies on Exhibit Q478. Q478

provides a much more detailed analysis of the construction costs. This exhibit shows the cost of constructing a parking lot to the design originally requested. However, SSW is liable only for the costs of putting the parking lot into the position it would have been in if properly constructed the first time. This evidence also gives some guidance as to the costs of specific construction items. In determining what damages are sustainable the court must analyze that data.

A reasonable jury could have found SSW was liable for regrading the parking lot. Exhibit Q478 estimates the cost of engineering to set grades as $10,000. A jury could have inferred that SSW was liable for replacing all the pavements. The original construction required 6,873 tons of Standard Duty ("SD") asphalt. Exhibit Q478 lists the price of SD asphalt as sixty-five dollars a ton. Thus a jury could have inferred SSW was liable for $446,745 in SD asphalt replacement costs. The original plans called for 1,280 tons of Heavy Duty ("HD") asphalt. This could also be purchased for sixty-five dollars per ton. Thus SSW could have been liable for $83,200 in HD asphalt. Using the same type of calculations, a jury could have found SSW liable for $51,300 in labor and $7,000 in caulk joints. Further Exhibit Q478 represents a demolition cost of $33,555. Finally, the court finds that SSW could have been liable for $76,570 worth of concrete. This number represents the original cost of concrete because based on the evidence submitted it is impossible to determine the current market value of this concrete. This creates a total liability for the replacement of the pavement at $708,370.

Taking the evidence in the light most favorable to the verdict, Wal-Mart also proved damages related to the lime stabilization. Wal-Mart showed that forty percent of the core samples it took had less lime stabilization than required. Wal-Mart did not put on any proof of the costs of adding the correct amount of lime stabilization. The court is uncertain if all the lime would have been replaced, some lime would have to be added, or testing would have to be done

to determine the best course of action to take. Wal-Mart did not put on any proof of the costs to take the lime stabilized soil as it existed and put it in the condition it would have been in had the construction been properly done in 2000 and 2001. Likewise the court is unable to determine if dirt excavation and replacement would have been necessary had Wal-Mart elected to go forward with the original design instead of adopting a new design. This failure in proof makes any award for these damages too speculative to stand.

The court finds the jury could have returned a verdict finding SSW liable for $708,370 in damages to the parking lot. The jury in this case found SSW and Wal-Mart both to be fifty percent liable for the damages. As such the total sustainable verdict against SSW is capped at $354,185. Federal courts applying Mississippi law may grant a remittitur, should the parties fail to accept that remittitur, the court may order a new trial solely on damages. *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176 (5th Cir. 1995) (citing Miss. Code Ann. § 11-1-55; *Westbrook v. General Tire and Rubber Co.*, 754 F.2d 1233, 1242 (5th Cir. 1985); *Cadarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 786 (5th Cir. 1983)). The court will exercise its power in this instance. The court will reduce Wal-Mart's award to $354,185. If either Wal-Mart or SSW are unwilling to accept this amount the court will order a new trial solely on the issue of damages as they relate to the repair costs of the parking lot. *See Dedeaux v. Pellerin Laundry, Inc.*, 947 So. 2d 900, 907-909 (Miss. 2007) (finding that all parties must accept remittitur in order to avoid a new trial). The parties have ten days from the entry of this order to file any objection to the amount awarded by the court.

Finally, SSW attacks the damages award related to construction defects in the building. This argument partially mirrors SSW's attack on the parking lot damages. Wal-Mart again submitted sufficient proof to distinguish between repair and replacement costs as discussed

above.

Again it is undisputed that there were at least some construction defects in the construction of the building. The question before the court then becomes whether Wal-Mart sufficiently proved the construction defects caused a particular damage. Wal-Mart relies on the testimony of Randy Ahlrich for the proposition that the incorrectly laid buffer was in the areas where the exterior walls had cracked and settled. Ahlrich also stated that a lack of compaction under walls resulted in some damage. Joe Ferguson testified that one of the walls was improperly constructed because the blocks were not interlaced and expansion control joints were improperly laid out. He also discussed how drainage problems caused by construction defects weakened the subgrade under the building.

SSW illuminates the fact that Ferguson also blamed the damages to the building on design defects. Having heard Ferguson's testimony the court is aware that his main thrust indicated that the damage to the building was caused by an inadequate design. For the purposes of deciding whether to grant a judgment as a matter of law, the court must consider that the jury disregarded this portion of Ferguson's testimony, yet relied on his comments regarding construction defects. The jury could infer that all the damage to the building was caused by the negligence of SSW and Qore.[6]

Wal-Mart proved the cost of remediation of the building was $1,027,590. The proof shows there were approximately $90,000 in betterments associated with the building. This leaves a sustainable verdict amount of greater than $900,000. The court will not attempt to parse what portion of the $900,000 the jury decided not to award in finding $486,000 in liability. It is

---

[6] The jury found Qore ten percent liable for the damage to the building based on its inspection and testing contract. As of this point, Qore has not challenged that finding.

clear the award was not greater than the maximum possible recovery.

SSW next argues that even if the proof is sufficient, Wal-Mart conceded in its closing statement that there were only $165,000 in damages.[7] This particular language in the closing statement is confusing. It initially appears that Wal-Mart makes such a concession. In the next sentence Wal-Mart's counsel states the $165,000 is only for engineering oversight. Later Wal-Mart's counsel asks the jury to find only $165,000 in damages because SSW did the repairs under warranty at no cost to Wal-Mart. Neither party points to evidence conclusively demonstrating this was warranty work. In fact the exhibits submitted to the jury show significant monetary outlays by Wal-Mart.

Based on this analysis the court will uphold the jury's damage award as it relates to the building. There is sufficient evidence to find SSW and Qore liable for 100% of the damage to the building. The court will, however, entertain any motions to reduce this amount based on evidence that SSW provided the work at no cost to Wal-Mart. Wal-Mart is not entitled to recover damages it did not sustain.

The court will also deny SSW's motion for a new trial. This court sitting as the finder of fact would probably have come to a different decision in rendering a verdict. However, this verdict is consistent with the evidence presented. Further it is consistent with the remainder of the complex verdict returned by this jury. The jury's verdict is not against the great weight of the evidence and SSW is entitled to no relief on this claim.

The court will sustain the verdict except for that portion related to damages to the parking lot. The parking lot verdict will be reduced or if there is an objection to that reduction the court

---

[7] SSW offers the court no authority for the proposition that a recovery can be limited by counsel's request in a closing statement. The court instructed the jury in this case that they were not bound by estimates made by counsel and no party has challenged the validity of that instruction.

will conduct a new trial solely on the grounds of damages.

SSW's motion for a judgment as a matter of law or in the alternative for a new trial is GRANTED IN PART and DENIED IN PART.

This the 23rd day of April, 2009.

/s/ MICHAEL P. MILLS
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**