# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

| | |
|---|---|
| **WAL-MART STORES, INC.** | **PLAINTIFF** |
| **V.** | **CAUSE NO. 1:06CV326** |
| **QORE, INC.; SAIN ASSOCIATES, INC. AND SHANNON, STROBEL & WEAVER CONSTRUCTORS & ENGINEERS, INC.** | **DEFENDANTS** |
| **SHANNON, STROBEL & WEAVER CONSTRUCTION & ENGINEERS, INC.** | **THIRD PARTY PLAINTIFF** |
| **V.** | |
| **CAMCO CONSTRUCTION COMPANY, INC.** | **THIRD PARTY DEFENDANT** |

## Memorandum Opinion

This cause comes before the court on the motion of the plaintiff, Wal-Mart Stores, Inc. ("Wal-Mart"), for attorney's fees.

Wal-Mart filed suit against defendants, Qore, Inc. ("Qore"), Sain Associates, Inc. ("Sain"), and Shannon, Strobel & Weaver Construction & Engineers, Inc. ("SSW"), alleging the design and construction of the Starkville Wal-Mart location caused major damage to that building and its grounds. In this suit Wal-Mart sought $11.8 million dollars. The jury returned a verdict finding SSW liable for $797,495.75 worth of damage to the grounds of the Starkville Wal-Mart. The jury also found SSW liable for $437,400 worth of damage to the building itself. The jury attributed $48,600 in damages to the building to Qore. The jury found Wal-Mart suffered no diminution in value to its building. The jury also rejected all claims of liability brought against Sain.

The parties filed a flurry of post-trial motions. Before the court could decide those motions and enter a final judgement Wal-Mart and SSW settled. In the final pending motion Wal-Mart has requested $990,000[1] in attorney's fees from Qore.

Wal-Mart and Qore entered into two contracts related to the Starkville property. The first of those contracts was for geotechnical engineering services. The second contract was for inspection and testing. The jury only found liability under the inspection and testing contract. That contract provides that:

> The Testing and Inspection firm further agrees to indemnify and hold Wal-Mart free and harmless from any claim, demand, loss, damage, or injury (including Attorney's fees) caused by any negligent act or omission by the Testing and Inspection firm, its agents, servants, or employees.

Qore argues (1) the indemnification clause only applies to attorney's fees generated when defending against third parties; (2) Wal-Mart has failed to prove it was under a legal obligation to pay these attorney's fees; (3) Wal-Mart's own negligence caused the need for these fees; (4) Wal-Mart has failed to identify the amount of fees attributable directly to Qore; and, (5) the fees sought by Wal-Mart are unreasonable.

Mississippi law allows for the recovery of attorney's fees when authorized by contract. *Culbreath Revocable Trust v. Sanders*, 979 So.2d 704, 712 (Miss. App. 2007). The first question presented to this court is whether the contract in question allows for attorney's fees in this instance. That is a matter of contract interpretation.

In Mississippi, "it is a question of law for the court to determine whether a contract is ambiguous and, if not, [to] enforce the contract as written." *Royer Homes of Mississippi, Inc. v. Chandeleur Homes, Inc.*, 857 So.2d 748, 751 (Miss. 2003) (internal citations omitted). Wal-

---

[1] The documentation submitted shows Wal-Mart was actually billed for $1,008,748 in legal fees. This figure and the amount sought both exclude the billings of co-counsel Raymond Brown.

Mart argues that the plain language of the contract provides for attorney's fees to the extent Qore was responsible for the work that led to the underlying suit. Qore argues that the indemnity clause only applies to attorney's fees in suits with third parties.

Under Mississippi law parties can make contractual arrangements regarding attorney's fees. *Culbreath Revocable Trust*, 979 So.2d at 712. The application of such a provision is to be determined by "a plain reading of the contract." *Turner v. Terry*, 799 So.2d 25, 38 (Miss. 2001).

An objective reading of the language of a contract must be used to determine the purpose or intent of the parties. *Royer Homes*, 857 So.2d at 751. What the parties said is the best evidence of their objective intent. *Id*. at 752-53. Even where the parties disagree about the meaning of certain language, where that language is clear it evidences their intent. *Id*. at 753.

The agreement states that Qore will indemnify Wal-Mart against injury including attorney's fees for losses based on Qore's negligence. There is a jury finding that Qore was negligent and that negligence caused injury to Wal-Mart. Wal-Mart was forced to sue Qore in order to recover for that injury.

There are three Mississippi cases which have dealt with similar problems. In *Morgan v. U.S. Fidelity & Guaranty Co.*, the court held than an indemnification clause allowed for attorney's fees related to a first party suit. 191 So.2d 917, 924 (Miss. 1966). The pertinent part of the agreement in *Morgan* reads:

> [T]o indemnify the Company against all loss, damages, claims, suits, costs and expenses whatever, including court costs and counsel fees at law or in equity, or liability therefor, which the Company may sustain or incur by reason of: executing or procuring said bond, or procuring its release or evidence therof from same, or investigating, defending, prosecuting or settling any claim, suit or other proceeding which may be brought or threatened by or against any of the undersigned or the Company.

*Id*.

Similarly, *Turner v. Terry* holds attorney's fees are appropriate in a first-party enforcement action where the indemnity clause of the contract in question read:

> (A) The Pledgor agrees to indemnify Turner from and against any and all claim[s], losses and liabilities growing out of or resulting from this Agreement (including, without limitation, enforcement of this Agreement), except claims, losses or liabilities resulting solely and directly from Turner's gross negligence or willful misconduct.
>
> (B) The Pledgor will upon demand pay to Turner the amount of any and all cost[s] and expenses, including the . . . disbursements of Turner's counsel and of any experts and agents, which Turner may incur in connection with (i) the administration of the Agreement; (ii) the custody preservation, use or operation of, or the sale of, or enforcement of any of the rights of Turner hereunder; (iv) the failure by the Pledgor to perform any of the provisions hereof, except expenses resulting solely and directly from Turner's gross negligence or willful misconduct.

799 So.2d at 38.

These two cases indicate Mississippi law allows for indemnity in bringing first party lawsuits as long as the language of the agreements is broad enough to encompass that purpose.

In *Cain v. Cain*, the Mississippi Court of Appeals rejected a first party suit award of attorney's fees under a broad indemnity agreement. 967 So.2d 654, 666 (Miss. App. 2007). The language in the indemnity clause at issue in *Cain* is:

> [Lakeview] and [Quest] agree to indemnify, hold harmless and defend each other, from and against all losses, claims, suits, damages, actions, causes of action, proceedings, demands, assessments, settlements, judgements, costs, expenses, or other liabilities of any kind or nature imposed on or asserted against the indemnified party as a result of, arising out of or relating to the indemnifying party's negligent or willful acts or omissions in the performance of services under this Agreement.

*Id*. at 665. In *Cain* the Mississippi Court of Appeals held "the plain language of the indemnity agreement appears to be limited to the parties' performance of patient services." *Id*. at 666. Because the underlying suit was in regards to payment for services rendered, the Court held the

indemnity clause was inapplicable. *Id*. at 659, 666.

This case is more in line with *Morgan* and *Turner* than it is with *Cain*. In the instant dispute the object of the suit is the workmanship under the testing and inspection contract. The contract uses broad language to define Qore's liability specifically incorporating attorney's fees related to a loss.

Qore next argues Wal-Mart has failed to prove it was under a legal obligation to pay the disputed attorney's fees.

Summing up the obligation element of indemnity law the Mississippi Supreme Court wrote:

> In *Southwest Mississippi Electric Power Association v. Harragill*, 182 So.2d 220, 223 (Miss. 1966), this Court held that to recover indemnity the indemnitee must allege and prove that he was legally liable to the person injured and, consequently, paid under compulsion; otherwise, the payment was in law a voluntary one for which there could be no recovery in an indemnity action. *Bush v. City of Laurel*, 215 So.2d 256, 260 (Miss. 1968), proceeds on the same premise, holding that a payment made after liability has been established is one made under compulsion. *Hopton Building Maintenance, Inc. v. United Parcel Service, Inc.*, 559 So.2d 1012, 1014 (Miss. 1990) is to like effect. *Maryland Casualty Co. v. R.H. Lake Agency, Inc.*, 331 F.Supp. 574 (N.D. Miss. 1971), perceptively applies Mississippi law to the point.

*Keys v. Rehabilitation Centers, Inc.*, 574 So. 2d 579, 584 (Miss. 1990).

Qore argues Wal-Mart was not obligated to pay attorney's fees in this matter, but instead simply chose to bring the instant action. That is not Mississippi's law. The obligation element under Mississippi law requires:

> If an unjust demand is made upon a party for that which he does not owe, when he knows or ought to know all the facts, he must avail himself of the means the law affords and resist the demand.

*Southwest Mississippi Elec. Power Ass'n*, 182 So. 2d at 468 (citing *McDaniel Bros. Constr. Co.*

*v. Burk-Hallman Co.*, 175 So. 2d 603 (Miss. 1965); *see also Keys*, 574 So. 2d at 584 (holding that a party does not have to avail itself of its right to a trial in the underlying suit, but must simply prove liability in the suit for indemnity). When the Mississippi Supreme Court speaks in terms of obligation it simply means a party can not pay an unwarranted or unreasonable fee and recover under an indemnity clause. The obligation element is designed to protect indemnitors from contractual partners who might pay claims for which a valid defense existed. *See Southwest Mississippi Elec. Power Ass'n*, 182 So. 2d at 468.

A party can not settle a claim with a third party and then seek indemnity unless that party can prove liability to the third party. In first party indemnity actions the only question of obligation is whether liability exists. In this instance the jury determined Qore was negligent. Thus Qore was liable to Wal-Mart and the obligation element has been met. No other construction would be consistent with the awards granted in *Morgan* and *Turner*. In both those instances the party seeking indemnity chose to bring suit and was able to indemnify itself once a finding of liability was made.

Qore next argues Wal-Mart's negligence caused the need for the fees in dispute. Mississippi law prohibits indemnification of one's own negligence. *See* Miss. Code. Ann. § 31-5-41; *Blain v. Sam Finley, Inc.*, 226 So. 2d 742, 746 (Miss. 1969). That, however, is not a complete defense in this instance. The jury in this case also found Wal-Mart negligent. Any portion of attorney's fees solely dedicated to defending against Wal-Mart's negligence are not recoverable. However, that is an issue to be addressed in determining the amount of the award and not the award's appropriateness.

Similar analysis holds true for the final two defenses raised by Qore. Qore argues Wal-Mart has not identified the amount of fees directly attributable to Qore and that Wal-Mart's

request is unreasonable. Both of these defenses are best addressed in terms of fee computation rather than as stand alone defenses.

The amount of attorney's fees to be awarded is within the discretion of the court. *Mauck v. Columbus Hotel Co.*, 741 So.2d 259, 269 (Miss. 1999) (citing *Gilchrist Tractor Co. v. Stribling*, 192 So.2d 409, 418 (Miss. 1966)). The court is not bound to accept the testimony or proof put on by attorneys but may rest its award on its own judgment. *Id.* (citing *Deer Creek Constr. Co. v. Peterson*, 412 So.2d 1169, 1173 (Miss. 1982)). In making such a decision the court should rely on the factors set forth in Rule 1.5 of the Mississippi Rules of Professional Conduct. *Id.* Rule 1.5 lays out the following factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

In large part these rules have been codified by the Mississippi legislature. Miss. Code Ann. § 9-1-41.

In *Mauck*, the court also endorsed awards determined using the "lodestar" method applicable under federal law. 741 So.2d at 271. A lodestar calculation starts by determining the

number of hours reasonably worked and multiplying that number by a reasonable rate. *Id*. (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

Mississippi law is willing to accept any judgment of the court that is fair. The Mississippi Supreme Court has endorsed virtually all methods of calculating reasonable attorney's fees. Trial courts must simply use their best judgment in determining an award. As such the court will consider the factors in Rule 1.5 of the Mississippi Rules of Professional Conduct and use those factors in helping to determine a proper lodestar figure. In making such a determination the court not only follows the accepted method for determining the amount of award, it also address Qore's defense that the fees sought are unreasonable.

Wal-Mart seeks $990,000. In support of that award it has submitted affidavits from two attorneys and daily time records. Qore has not submitted any outside information for the court to consider.

This matter involved a complex construction suit with multiple defendants and the potential for a large award. The legal issues involved were not unique, but certainly required a great deal of study on the part of the attorneys.

Wal-Mart was represented by lawyers of much renown with histories of successful litigation practice. This representation did not cause any hardship for the associated attorneys. On the contrary successful litigation efforts in this matter likely placed all the attorneys in a position to gain new business.

The rates charged by Wal-Mart's attorneys were reasonable for this locality. Lead counsel worked for $325 per hour. Other firm shareholders billed at $225 per hour. Associates billed at $195 and $145 per hour based on experience. Paralegal work was billed at $75 per hour.

Wal-Mart proposed a lodestar rate of $275 per hour. This rate reflects the actual billing in this matter. While the specific rates charged are not unreasonable, the court finds this proposed lodestar rate unreasonably high. Much of the work was billed at the lead counsel rate of $325 per hour. However, most of the work could and should have been performed by attorney's with lower rates.

For instance Jim Cowles billed 2.70 hours for "[r]esearch of construction law as to diminished value from defects in a building" on December 20, 2005. While that research may well have had some value, it was not central to the case presented. Further this broad-based initial research is the grunt work of law practice. There is no reason this work should not have been performed by a first year associate. On May 9, 2006 Cowles billed Wal-Mart for 2.60 hours searching for articles on the internet.[2] He billed an additional 6.40 hours that week for the same type of activity. On September 18, 2006, Cowles billed 0.70 hours searching for the correct corporate names of the defendants. These and many other examples show billings at rates not commiserate with the skill required to move this case forward.

Those who can afford to hire any attorney often choose a big name in order to feel at ease in litigation. Cowles certainly fit that bill for Wal-Mart. This court understands that desire and in no way seeks to discourage such an action. However, the truth is that much of successful law practice requires no great expertise beyond the minimum level of legal competency. This is especially true in large document intensive cases. While some parties may feel more comfortable with their lead attorney handling all the day-to-day work in a case, it is unreasonable for indemnifying parties to have to bear that expense. As such the court finds the appropriate lodestar billing rate is $225 per hour. This rate is consistent with the amount billed by partners

---

[2] The court can not be sure about the object of these searches based on the billing information provided.

working on this case. That rate reflects the seriousness of the financial stakes while keeping in mind the breadth of billing for routine matters.

From the court's perspective it appears Wal-Mart allowed its attorneys to proceed with the case as they saw fit imposing no time or other constraints on them. Of course the court can not fully comprehend the attorney-client relationship from the view of the bench. Wal-Mart's lead counsel indicates he has previously represented Wal-Mart in some actions, but the court can not make a determination in regards to the length of the relationship between Wal-Mart and this particular group of lawyers.

The most difficult questions before the court are what to make of the results of the case and how many of the billed hours are directly attributable to Qore's negligence. It is at this point that the court must consider Qore's defense that Wal-Mart's own negligence caused the need for these fees and that Wal-Mart has failed to identify the amount of fees attributable directly to Qore.

On the surface it appeared Wal-Mart had overreached in bringing so many claims against three different parties. However, deeper reflection shows that a small claim against Qore could not have been brought without this larger production. Each of the defendants blamed other parties for the problems with the Starkville Wal-Mart. A June 5, 2008 entry from Wal-Mart's billing reveals with Qore's strategy of blaming the other defendants versus Wal-Mart's desire to pin all liability on Qore's testing and inspection contract. This corresponds with an October 22, 2007 telephone conference in which Wal-Mart discussed with Sain Qore's position that Sain was responsible in this suit.

It is clear there were real damages to the site and Wal-Mart received a significant award

from the jury. It might appear spending $990,000 to recover $1,283,495.75 or attributing the entirety of that $990,000 to Qore, who is only liable for $48,600 in damages, is unreasonable. However, attributing the whole of the reasonable attorney's fees to Qore is supported by Fifth Circuit case law.

The Fifth Circuit has ruled that a low damages award does not mean that an award of attorney's fees should be reduced. *Cobb v. Miller*, 818 F.2d 1227, 1235 (5th Cir. 1987) (awarding $23,708.70 in attorney's fees where a plaintiff received only nominal damages and succeeded on just one of three claims). In this case Wal-Mart established strong proof of damages. Wal-Mart's position was that Qore was responsible for all that damage. Wal-Mart was forced to sue SSW and Sain because of defenses raised by Qore. In order to successfully prosecute any portion of this action it was necessary to bring each portion of it. As the potential liability and number of parties increased, the cost of bringing suit increased. As such the court finds the low damages award does not necessitate a reduction in the award of attorney's fees.

Where different claims can easily be separated plaintiffs should only recover attorney's fees for successful claims. Under Fifth Circuit law attorney's fees should not be reduced to a *pro rata* share where there are multiple defendants and interlocking claims that can not be easily separated. *Id*. at 1234.

In this case the court finds that the claims can not be easily separated. The court had trouble determining how to divide the claims for presentation to the jury. Making such a decision took hours of thought and discussion. The damages to one part of the property are inherently linked to damages to the adjoining parts of the property. As such the court finds the two claims unsuccessfully brought against Qore do not create the need to reduce the damages award.

Having reviewed the billing records the court does see some billing that seems excessive. For instance on August 28, 2005 Wal-Mart was billed 0.60 hours for a telephone conference regarding the cancellation of a mediation because a number of the principals were in the path of a hurricane. It does not take 36 minutes to cancel a mediation. This and other excessive billing in this case is minor  In large part it appears the billing is reasonable and well documented.

Wal-Mart was billed for 3,706.10 hours in bringing this suit. Wal-Mart only claims 3600 hours should be used to calculate the lodestar figure. The court can not find 106.10 hours that are unreasonable. As such the court will adopt the 3600 hour calculation.

3600 hours of billing at a rate of $225 per hour creates a lodestar amount of $810,000. As discussed above the court sees no reason to depart from this lodestar calculation.

Wal-Mart's motion [257] for attorney's fees is GRANTED. The court finds Qore liable for $810,000 to cover those fees.

This the 4th day of March, 2010.

    **/s/ MICHAEL P. MILLS**
    **CHIEF JUDGE**
    **UNITED STATES DISTRICT COURT**
    **NORTHERN DISTRICT OF MISSISSIPPI**